# Illinois Official Reports

## Appellate Court

---

### *People v. Blankenship*, 2019 IL App (1st) 171494

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEREMIAH BLANKENSHIP, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>No. 1-17-1494 |
| Filed | November 1, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-CR-13578; the Hon. James B. Linn, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Maria A. Harrigan, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Brian K. Hodes, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion. Justices Cunningham and Connors concurred in the judgment and opinion. |

¶ 1    Following a bench trial, defendant Jeremiah Blankenship was convicted of robbery (720 ILCS 5/18-1(a) (West 2016)) and sentenced to four years' imprisonment. On appeal, defendant argues that his conviction should be reversed because the State failed to prove him guilty beyond a reasonable doubt where the sole eyewitness's identification of defendant as the offender was not reliable.[1] For the following reasons, we affirm.

¶ 2                                I. JURISDICTION

¶ 3    The trial court sentenced defendant on May 31, 2017. He filed his notice of appeal that same day. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 603 (eff. Oct. 1, 2010) and Rule 606 (eff. Mar. 20, 2009), governing appeals from a final judgment of conviction in a criminal case entered below.

¶ 4                                II. BACKGROUND

¶ 5    Defendant was charged with one count of armed robbery while armed with a firearm and one count of aggravated unlawful restraint while using a deadly weapon, stemming from the August 17, 2016, robbery of Dewantez Daniels. At trial, Daniels testified that, between midnight and 2 a.m., he left Lauonta Dyers's house to walk to a gas station to purchase pain medication and a "swisher." He was walking down the alley behind the house, looking at his 5-S iPhone, when he "bumped into" two men he did not know. Daniels identified defendant in court as one of the men.

¶ 6    The alley was dark and had no artificial lighting, but Daniels could see defendant was wearing black Adidas pants with a white stripe and holding a black 9-millimeter gun in his right hand. The other man had a white scarf covering his face from his nose to his chin, and defendant had a scarf around his neck, which he was trying to put over his face. Daniels was approximately two to three feet away from the men when defendant pointed the gun at him. Daniels put his hands up with his phone in his left hand. Wearing brand new Michael Jordan gym shoes, he immediately kicked them off because he did not "want no problem" and thought the men would want the shoes.

¶ 7    Defendant asked Daniels, "[W]hat you got?" He gave the gun to his partner and searched Daniels while the other man continued to point the gun at Daniels. Defendant took "[n]ine dollars and three bags of weed and an iphone" from Daniels. He asked Daniels for the passcode to the phone and, after checking the passcode, walked away with the other man. The men did not take Daniels's shoes.

¶ 8    Daniels hid in the bushes until the men were far enough away, and then he ran into Dyers's house. He wanted to retaliate against the men, but Dyers talked him out of it. When Daniels checked his "iCloud" phone locator on a computer, he determined his stolen phone was around

_____

[1]The appendix to defendant's opening brief includes a trial court order of commitment and sentence and a notice of appeal (see Ill. S. Ct. R. 342 (eff. July 1, 2017)) but from an unrelated case involving a different defendant. The documents relevant to defendant are, however, included in the record on appeal.

the corner "on the next block." Daniels drove his car to his phone's location "trying to see if [defendant] was right there for real." He found defendant in front of an apartment building, wearing the same black Adidas pants with white striped lining he was wearing when he robbed Daniels 30 to 45 minutes earlier.

¶ 9 Dyers called the police, and Daniels made a police report. Daniels and the police officers drove to the apartment building to identify the person who took his phone. Defendant was still standing in front of the building where Daniels had last seen him. When the police turned on their lights, he ran into the building. The police did not follow him because they did not know which apartment he ran into. They told Daniels, "you're going to have to catch him on the outskirts."

¶ 10 That morning, in daylight, Daniels drove back to where he had seen defendant. From across the street in his car, he saw defendant for the third time. Defendant was sitting in the front of the building wearing the same clothes he had worn when he robbed Daniels. He was using Daniels's phone. Daniels got out of his car, approached defendant, and told him "you're a b*** a** n***, you rob me, you're sitting on the front and got my phone, and you're a dumb a** n***—you got on the same f*** clothes." Defendant ran into the building. Assuming defendant was going to get his gun, Daniels drove to a nearby parking lot and called the police.

¶ 11 Police responded "with the sirens and everything," and Daniels pointed out defendant, who was back outside the building. Defendant flagged down a car and got into the passenger seat. The police stopped the car and "restrain[ed]" defendant. At the police station, Daniels identified defendant in a photograph as the person who robbed him. Daniels acknowledged he had one prior felony conviction, a Class 4 possession of a controlled substance from June 2008.

¶ 12 On cross-examination, Daniels stated that he was going to the gas station to buy swishers, which are used to smoke marijuana. He had smoked one blunt of marijuana that day and intended to smoke another one because he had a toothache. Daniels "bumped right into" defendant and was two to three feet from him as he pointed the "nine millimeter, all black, big" gun at Daniels' face. The robbery lasted two to three minutes. Daniels gave police a description of defendant, and described him as "wearing all black," taller and heavier than the "five, five," 120-pound Daniels, and having a medium complexion. Daniels described the man with defendant as "skinnier" than both himself and defendant.

¶ 13 The police told Daniels he would have to wait for defendant to be outside to have him arrested. The morning after the robbery, Daniels went back to the apartment building and saw defendant again in front of the building. Daniels was across the street in his car, 10 feet away.

¶ 14 Defendant had caught his attention "the first time" because he was wearing the same clothes as when he robbed Daniels. "If [defendant] never had the clothes on, [Daniels] would have rode past," as the clothes were what he initially noticed from afar. Daniels testified that, once he walked up the street, he knew it "was him because I seen him when he never had the ski mask on his face when he was robbing me. That's how I identified, knew that was him." While driving, Daniels initially spotted defendant because of defendant's black pants with a white stripe. However, when Daniels got out of the car and approached, he "identified him as his face, the same face that was the last night he robbed [Daniels]."

¶ 15 Chicago police officer Roman Zawada testified that he responded to a call of a person with a gun before 10:50 a.m. on August 17, 2016. As he approached the area, he saw Daniels jump over a gate, apparently tracking something or somebody. Daniels pointed out that the person

who robbed him was the passenger in an approaching car. Zawada ordered the car to stop and placed the passenger, whom he identified in court as defendant, into custody.

¶ 16 The court granted defendant's motion for a directed finding in part, striking "firearm" from both counts. As no firearm was recovered, the court concluded it could not determine whether the firearm was operable or "real." Defendant remained on trial for the lesser included offenses of robbery and unlawful restraint.

¶ 17 Defendant testified that on August 17, 2016, around 3 a.m., he was spending time with friends at the building when he got into a fight with one of them. His nose started bleeding and he wiped it with his shirt. Defendant was wearing a black Adidas outfit with white stripes but changed from the bloody shirt into a different one. He fell asleep in the hallway of the building and was awakened at 5 a.m. Defendant then sat outside the building, calling and texting his girlfriend on the cell phone he had owned for the 10 months since he left prison. He had three prior felony convictions and was on parole.

¶ 18 While he was outside on his phone, Daniels came up to him. He was cursing, threatened defendant, and accused him of robbery. Defendant had never encountered Daniels before. Daniels grabbed his pants at the waist, leading defendant to believe Daniels had a gun. Defendant ran inside the building and watched Daniels get back in his car and leave. Later, as defendant began walking toward the train to go home, he saw his friends and got in their car. Daniels then pointed defendant out to a police officer, who arrested him. When the police officer frisked defendant, he did not take anything from him. The phone defendant had on his person belonged to defendant.

¶ 19 On cross-examination, defendant stated that he was outside with his friends, in front of the building, from midnight to 3 a.m. on the day in question. Defendant did not live in the apartment complex.

¶ 20 The trial court found defendant guilty of robbery and unlawful restraint. It stated that the case was a "single finger identification case" and that Daniels's identification would need to be "tight and good," since he was the sole witness. The court found Daniels was, "in his own way, his own street wise way, very alert" and an "[e]xtraordinary young man" who knew his whereabouts and understood the dangers of the situation. Daniels called the police and did his own investigation. In the court's estimation, he was "very firm and tight about what happened." The court found that defendant was "not only less credible than Mr. Daniels but not credible" and that Daniels "carried the day" as an "extraordinary young witness." The court found defendant guilty of the lesser included offenses of robbery and unlawful restraint, which it merged. It denied defendant's motion for a new trial and sentenced defendant to four years' imprisonment. The court denied defendant's motion to reconsider sentence.

¶ 21 III. ANALYSIS

¶ 22 Defendant argues on appeal that this court should reverse his conviction because the State failed to prove beyond a reasonable doubt that he robbed Daniels, where Daniels was only able to give a general description of the man who robbed him and only recognized defendant due to the unremarkable clothing he was wearing at the time.

¶ 23 The standard of review in challenging the sufficiency of the evidence is "whether, viewing the evidence in the light most favorable to the State, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Internal quotation marks

omitted.) *People v. Belknap*, 2014 IL 117094, ¶ 67 (quoting *People v. Collins*, 106 Ill. 2d 237, 261 (1985)). The trier of fact, here the trial judge, has the responsibility to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *People v. Brown*, 2013 IL 114196, ¶ 48. Accordingly, this court will not retry the evidence or substitute its judgment for that of the trier of fact on issues involving the weight of the evidence or credibility of witnesses. *Id.* A reviewing court will not reverse a criminal conviction unless the evidence is "unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt." (Internal quotation marks omitted.) *People v. Jackson*, 232 Ill. 2d 246, 281 (2009).

¶ 24    We find the evidence sufficient to support defendant's conviction. To prove defendant guilty of robbery as charged, the State had to prove that defendant knowingly took property from Daniels by the use of force or by threatening the imminent use of force. 720 ILCS 5/18-1(a) (West 2016). Daniels consistently identified defendant as one of the two men who took personal property from him at gunpoint. The testimony of a single witness is sufficient to convict if the testimony is positive and credible, even where it is contradicted by the defendant. *People v. Gray*, 2017 IL 120958, ¶ 36. Here, the trial court found Daniels's testimony that defendant robbed him credible and found defendant's version of events not credible. We defer to those credibility determinations. *Brown*, 2013 IL 114196, ¶ 48. Accordingly, Daniels's testimony, standing alone, is sufficient for a rational trier of fact to find the elements of robbery beyond a reasonable doubt.

¶ 25    Nevertheless, defendant argues this is a case of mistaken identity, where the robbery took place in a dark alley and Daniels gave only a general description of the robber, did not know the robber, had never seen defendant before, and identified defendant as the robber only because defendant was wearing unremarkable clothing and holding a cell phone, which Daniels never identified as his property.

¶ 26    Where a finding of guilty depends on eyewitness testimony, the reviewing court must decide whether a fact finder could reasonably accept the testimony as true beyond a reasonable doubt. *Gray*, 2017 IL 120958, ¶ 36. Testimony may be found insufficient only "where the record evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt." *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004).

¶ 27    In assessing identification testimony, we consider the following five factors set forth in *Neil v. Biggers*, 409 U.S. 188 (1972): (i) the witness's opportunity to view the defendant during the offense, (ii) the witness's degree of attention at the time of the offense, (iii) the accuracy of the witness's prior description of the defendant, (iv) the witness's level of certainty at the subsequent identification, and (v) the length of time between the crime and the identification. *People v. Slim*, 127 Ill. 2d 302, 308 (1989). "None of these factors, standing alone, conclusively establishes the reliability of identification testimony; rather, the trier of fact is to take all of the factors into consideration." *People v. Joiner*, 2018 IL App (1st) 150343, ¶ 47 (citing *Biggers*, 408 U.S. at 199-200). For the following reasons, we find the *Biggers* factors support the reliability of Daniels's identification of defendant as one of the men who robbed him.

¶ 28    With respect to the first *Biggers* factor, Daniels had ample opportunity to view defendant during the robbery. Daniels testified that the robbery took approximately two to three minutes, and defendant's face was uncovered throughout the entire encounter. Further, although the alley where the robbery took place was dark with no artificial light source, Daniels testified

that he was only two to three feet away from defendant and had, in fact, bumped into him. Daniels saw defendant long enough to be able to note details concerning not only defendant's physical characteristics, but also the clothing he was wearing at the time, the gun he was holding, and the scarf he was attempting to raise over his face. Daniels also testified regarding the white scarf worn as a mask by the second robber, as well as that man's build. A positive identification need not be based upon perfect conditions for observation, nor does the observation have to be of a prolonged nature. *People v. Williams*, 143 Ill. App. 3d 658, 662 (1986). Given Daniels's detailed testimony regarding the nature of the robbery and its perpetrators, Daniels had ample opportunity to view defendant during the robbery.

¶ 29    Regarding the second *Biggers* factor, we find defendant's degree of attention during the robbery favors the State. We find no indication that, as defendant argues, Daniels's degree of attention was compromised by his focus on the gun. Despite the presence of the weapon, Daniels was able to give a detailed account of the events of the robbery and the physical descriptions of both defendant and gun. See *In re J.J.*, 2016 IL App (1st) 160379, ¶ 30 (a witness's detailed and descriptive testimony indicated that she was attentive during the encounter, despite having a gun pointed at her).

¶ 30    Defendant contends Daniels's degree of attention was negatively affected by his admitted use of marijuana prior to the incident and that his "addiction," as demonstrated by his possession of and intent to smoke more marijuana, affected his capacity to observe, retain accurate impressions, and be truthful. There was no evidence that defendant was "addicted" to marijuana as defendant claims. Further, having heard Daniels testify regarding his use of marijuana, the trial court still found him to be an "extraordinary young witness," whose "very firm and tight" credible testimony proved defendant committed robbery as charged. We defer to that credibility determination. *Brown*, 2013 IL 114196, ¶ 48. Accordingly, the record does not compel a conclusion that Daniels's degree of attention was insufficient to make a positive identification of defendant.

¶ 31    With regard to the third *Biggers* factor, defendant contends that Daniels gave police only a "general description," with no mention of facial features, and was only able to identify defendant because of his clothing. Daniels, however, described to officers not only defendant's clothing, but also his height, build, and complexion. Also, although Daniels initially noticed defendant's clothes as he drove down the street, upon approaching defendant, Daniels saw his face and recognized him as the robber. Daniels testified he had "seen [defendant] when he never had the ski mask on his face when he was robbing me. That's how I identified, knew that was him," because it was "the same face that was the last night he robbed me." Accordingly, even though Daniels gave police only a general description of the robber, his identification of defendant as the robber based on his recognition of defendant's face supports the accuracy of his identification. See *People v. Tomei*, 2013 IL App (1st) 112632, ¶¶ 51-52 (holding that a witness's positive identification, including recognition of defendant's face, may be sufficient, even if he gave only a general description based on his total impression of defendant's appearance).

¶ 32    As defendant concedes, the fourth *Biggers* factor, Daniels's certainty as to his identification of defendant, weighs in favor of that identification. Defendant, however, contends this factor should be given little weight because social science research suggests a weak correlation between confidence and accuracy of an identification. Defendant did not present expert testimony at trial to support its argument that the correlation is weak in this case.

This court has found defendant's argument unpersuasive where no such evidence was presented to support a finding that the witness's certainty should be given little weight. See *id.* ¶ 56 ("Since defendant did not present expert testimony, we do not find defendant's argument persuasive that the fourth factor, the witness's level of certainty, should be given little weight."). Also, defendant raises this point for the first time on appeal. " '[I]f the defendant in the case at bar had introduced into evidence the testimony of an expert in eyewitness identification research, the trial court may have [then] chosen, based on the evidence presented in the case, to omit one of the listed factors.' " *Id.* ¶ 55 (quoting *People v. Rodriguez*, 387 Ill. App. 3d 812, 824 (2008)).

¶ 33 Lastly, defendant is correct that the fifth *Biggers* factor, the length of time between the crime and the identification, weighs in favor of Daniels's identification. Daniels was robbed after midnight on August 17, 2016, and identified defendant to police for the first time approximately 45 minutes later. He again identified defendant to police some hours later, at which point police arrested defendant. Daniels's identification of defendant took place mere hours after defendant robbed him in the alley. Significantly longer lengths of time have not rendered identifications unreliable. See, *e.g.*, *People v. Malone*, 2012 IL App (1st) 110517, ¶ 36 (one year and four month delay between crime and positive identification). Accordingly, the fifth *Biggers* factor weighs in favor of Daniels's identification.

¶ 34 Taken together, the five *Biggers* factors support the reliability of Daniels's identification of defendant as the unmasked man who took his personal property at gunpoint. Accordingly, viewing the evidence in the light most favorable to the State, we conclude a rational trier of fact could have found defendant guilty of robbery beyond a reasonable doubt.

¶ 35                                        IV. CONCLUSION
¶ 36 For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 37 Affirmed.