2021 IL App (1st) 171510-U

No. 1-17-1510

Order filed April 15, 2021

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 13 CR 1069 |
| | ) | |
| MARKEEM SCOTT, | ) | Honorable |
| | ) | William T. O'Brien, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Justice Reyes concurred in the judgment.
Justice Martin specially concurred.

**ORDER**

¶ 1   *Held*:   We affirm defendant's conviction for robbery and sentence of four years' probation over his contentions that the evidence was insufficient to sustain his conviction and that his sentence was excessive.

¶ 2   Following a bench trial, defendant Markeem Scott was convicted of robbery (720 ILCS 5/18-1(a) (West 2012)) and sentenced to four years of probation, subject to conditions of the probation program supervised by the Gang Intervention Unit of the Cook County Adult Probation

Department. On appeal, he contends that his conviction must be reversed because there was insufficient identification evidence to prove beyond a reasonable doubt that he was the offender. He also claims that the court erred in sentencing him to "gang probation" and that the four-year term of probation is excessive. For the following reasons, we affirm.[1]

¶ 3     Defendant was charged in two separate cases (13 CR 1068 and 13 CR 1069) for crimes against separate victims on the night of November 30, 2012. Although there was a joint bench trial for both cases, only one of those cases (13 CR 1069) is at issue in this appeal.[2] In that case, defendant was charged by indictment with robbery (count I), and two counts of aggravated battery (counts II and III) for offenses against Allison Helliwell. The State elected to proceed on count I and II and nol-prossed count III.

¶ 4     At trial, Helliwell testified that at approximately 9:35 p.m. on November 30, 2012, she left her Damen Avenue apartment in Wicker Park to go to her car.  Her boyfriend had last parked the car, so she knew the vehicle's general vicinity but not its exact location. She walked down an alley and saw a car parked near a viaduct that looked similar to hers, but then saw it had a different license plate. As she continued to search, an individual came walking from the direction of the viaduct on the other side of the street and said "hey." She identified the individual as defendant. She was not looking at him before he spoke to her, but she turned to face him after he spoke.

¶ 5     Asked about the lighting conditions when she saw defendant, Helliwell said there was a street light and lights under the viaduct. As defendant approached her, she saw a second individual,

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

[2] Case 13 CR 1068 concerned alleged offenses against Jennessa Berg and Sofia Becker, who also testified at trial but whose testimony is not relevant to this appeal. Defendant was found not guilty of those offenses.

who was wearing a mask, come from the area of the viaduct. The two individuals came up to her quickly as she backed up. Helliwell testified: "I had my car keys in my hand and my bag like this, and they just came up right next to me, took my car keys from my hand and took my bag off." Asked how close defendant came to her, she stated "very close" and testified that he was facing her. Defendant took her bag, while the other man took her keys. Defendant then grabbed her jacket and threw her on the ground. After she was on the ground, she was looking at defendant, who called her a "stupid f***ing bitch." Defendant and the masked person then ran away. Helliwell ran back to her apartment, called 911, and described the offenders. She testified that she described defendant as an African American male, medium complexion, wearing all black with his hair in short dreadlocks. She described the other offender as wearing a mask and black clothing.

¶ 6    Helliwell spoke with police officers who arrived at her apartment. After "not very much time had passed," police told her that they had a suspect in custody. Helliwell went to a police station and an officer escorted her near a parked police car, where officers "pulled the defendant out of the back seat and shined a light on him." She positively identified defendant.

¶ 7    On cross-examination, Helliwell acknowledged that it was dark outside but that she was in a well-lit alley. She estimated the incident lasted about 30 seconds and agreed that she spoke to police immediately after it happened. She agreed that the offender who pushed her down and spoke to her was right next to her. When she identified defendant, she estimated she was standing about four feet away from the police car. She acknowledged that she did not view a photo array or physical lineup.

¶ 8    The State introduced certain photographs (People's Exhibits 1 through 9) into evidence, which included photographs of Helliwell, defendant, and defendant's clothing from the night of his arrest.[3] The State rested, and defendant's motion for directed verdict was denied.

¶ 9    Detective Joseph Finegan testified that he spoke with Helliwell after responding to a robbery call. Helliwell told that him that the first offender was wearing a black top, blue jeans, with braids and the second person was wearing a black ski-mask type hat and blue jeans. He did not recall her saying that either man was wearing a black hoodie with a red graphic. Finegan was present when Helliwell identified defendant later that evening; he estimated that the distance between Helliwell and defendant was 30 feet. Finegan testified that defendant was wearing a black sweater, sweatshirt, and blue jeans.

¶ 10   On cross-examination, Finegan agreed that Helliwell described the person who pushed her to the ground as being about five feet eight inches tall, 190 pounds, about 18 years old, with black hair, brown eyes, braids-style hair and a medium-brown complexion. He agreed that defendant was illuminated by squad lights during the identification, and that Helliwell positively and unequivocally identified him.

¶ 11   Defendant testified that as of November 30, 2012 he was 18 years old and a high school senior. That evening, he went to an electronics store called Micro Center to study. He was wearing a black hoodie with red graphics in the front and dark green pants with green graphics; he identified Defense Exhibit 1 as the hoodie he was wearing, and described it as having graphics that look like red horseshoes. Defendant denied that his hair was in braids on that day. He left Micro Center at approximately 8:30 p.m. and went to a nearby Vitamin Shoppe, and then to a McDonald's

_____

[3] After the parties submitted their briefing in this appeal, defendant supplemented the record on appeal with People's Exhibits 1 through 9, which this court has reviewed.

restaurant. He left the restaurant at approximately 10 p.m., planning to take a bus home. He noticed a police car, and an officer inside asked him to approach. The police questioned him, searched him and told him to get into the car. The police eventually pulled over, told him to get out of the car, and shined a light on him. Defendant denied robbing anyone.

¶ 12    Following argument, the trial court found defendant guilty. The trial court explicitly recognized the factors set forth in *Neil v. Biggers*, 409 U.S. 188 (1972), regarding the assessment of identification testimony and found that the factors weighed in favor of Helliwell's testimony. The court also remarked that it "didn't believe [defendant's] story" that he was studying at a retail store that evening.

¶ 13    Defendant filed a motion for a new trial. At a posttrial hearing, defense counsel argued that was no evidence of injury to Helliwell to maintain the finding of guilt on aggravated battery (count II). The court agreed, vacating the finding of guilt on count II but maintaining the finding of guilt for robbery (count I).

¶ 14    Defendant's presentence investigative report (PSI) indicated that he was born in 1994 and had one juvenile arrest for burglary in 2008. He had no prior adult convictions or other pending cases. Defendant had graduated from high school, expected to receive an associate's degree in 2017, and planned to continue his studies. The PSI indicated that since 2013 he had been employed at the GAIA Movement, a non-for-profit organization. Defendant also submitted a number of letters from coworkers, supervisors, and relatives attesting to his good character.

¶ 15    In aggravation, the State emphasized that Helliwell was alone and that he not only robbed her, but "physically abused" her by pushing her to the ground and "emotionally abuse[d]" her by calling her a "f***ing bitch." The State also referenced the evidence of the alleged robbery against

Berg and Becker, acknowledging that the court had found him not guilty beyond a reasonable doubt, but arguing that it was "more probably true than not."

¶ 16    In mitigation, defense counsel emphasized that defendant was only 18 years old at the time of the offense and was now 22 years old, attending college, and employed. Counsel referenced the letters submitted on defendant's behalf. Counsel emphasized that defendant had no prior convictions and had never been a gang member despite living in a "crime-infested neighborhood where gang activity is rampant." Counsel argued that defendant was on the "right path," had "put education first" and was working to support himself. Counsel also noted that defendant had spent nine months in jail in connection with this case, until his father posted bond.

¶ 17    Defendant declined to address the court in allocution. In imposing sentence, the court stated:

> "Court has considered the presentence investigation, and it's been supplemented by several letters, and I have reviewed those letters. Also, [the] Court has made itself aware again [and] been reacquainted with the facts of the case, the statutory factors in mitigation, as well as the arguments presented in mitigation. The Court has also considered the statutory factors in aggravation, as well as those arguments presented in aggravation.
>
> And, therefore, on the charge of robbery, the Court is going to sentence you to four years gang probation. You must follow all the terms and conditions of gang probation, as well as the adult probation department, and the drug and alcohol evaluation, follow all treatment recommendations of the evaluation. I'm also going to give you 20 days of Sheriff's Work Alternative Program, as well as periodic random urine drops, and mandatory fees and costs."

¶ 18    After warning defendant that he could be resentenced to up to seven years' imprisonment if he violated the terms of probation, the court also told defendant:

"THE COURT: This case involved someone that you are with. And for that guy, he decided he was going to wear the mask, and you didn't get a mask. And my inkling on this is that you were along for the ride. You need to find new friends. Because all the information that I received, despite the fact that you are in an area that as somebody characterized [was] infested with crime, that's the deal. It's not an excuse. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: So, again, I'm taking a chance on you. I really abhor when people accost people on the street. You have changed lives forever. And I think that - - I don't care where you're raised, or who you are, you know that you're not supposed to do that. It's not a thing of education; it's upbringing, and I know your folks raised you better than that that.

So, it will be four years gang probation, drug and alcohol evaluation, follow all treatment recommendations of that evaluation, 20 days Sheriff's Work Alternative program, periodic random urine drops, and mandatory fees and costs."

¶ 19    Defendant did not file a motion to reconsider sentence. He filed a timely notice of appeal.

¶ 20    On appeal, defendant first argues that his conviction for robbery must be reversed because the State failed to prove his guilt beyond a reasonable doubt. Specifically, he asserts that Helliwell's identification testimony was "highly unreliable" and that he gave "unrebutted" testimony that he was elsewhere at the time of the robbery. Defendant also notes the lack of other

evidence connecting him to the robbery. Accordingly, he asks that we reverse his conviction outright.

¶ 21    "When reviewing a challenge to the sufficiency of the evidence, this court considers whether, viewing the evidence in the light most favorable to the State, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original and internal quotation marks omitted.) *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007). In a bench trial such as the instant case, "it is for the trial judge, sitting as the trier of fact, to determine the credibility of witnesses" and to "resolve any conflicts in the evidence." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009).

¶ 22    A reviewing court "will not retry the defendant or substitute its judgment for that of the trier of fact on questions involving the weight of the evidence, conflicts in the testimony, or the credibility of witnesses. [Citation.]" *People v. Corral*, 2019 IL App (1st) 171501, ¶ 71. "Only where the evidence is so improbable or unsatisfactory as to create reasonable doubt of the defendant's guilt will a conviction be set aside. [Citation.]" *Id.* ¶ 72.

¶ 23    In this case, to prove defendant guilty of robbery, the State had to prove that he knowingly took property from Helliwell by the use of force or by threatening the imminent use of force. 720 ILCS 5/18-1(a) (West 2012). In this court, defendant does not challenge proof of any particular element of the offense, but rather contests Helliwell's identification testimony.

¶ 24    "Identification evidence which is vague or doubtful is insufficient to support a conviction. [Citation.] A single witness' identification of the accused, however, is sufficient to sustain a conviction if the witness viewed the accused under circumstances permitting a positive identification." *People v. Joiner*, 2018 IL App (1st) 150343, ¶ 47.  This court has explained:

"In assessing identification testimony, we consider the following five factors set forth in *Neil v. Biggers*, 409 U.S. 188 (1972): (1) the witness' opportunity to view the defendant during the offense; (2) the witness' degree of attention at the time of the offense; (3) the accuracy of the witness' prior description of the defendant; (4) the witness' level of certainty at the subsequent identification; and (5) the length of time between the crime and the identification. [Citation.]" *Id.*

None of these factors alone is dispositive; "rather, the trier of fact is to take all of the factors into consideration." *Id.* (citing *Biggers*, 409 U.S. at 199-200). Further, we keep in mind that "[e]yewitness testimony is insufficient only if the record compels the conclusion that no reasonable person could accept the testimony beyond a reasonable doubt. [Citation.]" *People v. Charles*, 2018 IL App (1st) 153625, ¶ 25.

¶ 25    Defendant urges that application of the five *Biggers* factors establishes that Helliwell's "weak and uncorroborated identification testimony" was insufficient to support his conviction. For the following reasons, we disagree.

¶ 26    With respect to the first factor—the opportunity to observe the offender—he suggests the "stress of this extremely brief incident" prevented Helliwell from getting a "good look at the offender" as her attention must have been "split between two people." However, Helliwell testified that she turned to face defendant after he approached and spoke to her. At no point did Helliwell suggest that she could not see defendant's face. Indeed, she testified that the area was well-lit and that defendant was not wearing a mask. See *People v. Macklin*, 2019 IL App (1st) 161165, ¶ 30 (victims "certainly had an adequate opportunity to view [defendant] *** as there was sufficient artificial lighting and [defendant's] face was not covered."). Nor did Helliwell testify that the second offender kept her from getting a good look at defendant. Rather, she testified that it was

defendant who pushed her down and called her a "bitch." Further, this court has held that even identifications made during brief encounters may be found credible. See, *e.g.*, *Macklin*, 2019 IL App (1st) 161165, ¶ 30 (trial court could find witness had adequate opportunity to view defendant even assuming opportunity "lasted seconds rather than minutes"); *People v. Petermon*, 2014 IL App (1st) 113536, ¶ 32 (identification testimony credible despite fact that the "entire incident took less than a minute"); *People v. Parks*, 50 Ill. App. 3d 929, 932-33 (1977) (identification from attack lasting "five to ten seconds" sufficient to sustain conviction)).

¶ 27     With respect to the second factor, defendant primarily argues that Helliwell's degree of attention was "insufficient to yield a reliable identification" because of the "highly stressful situation" of being robbed and pushed to the ground. He cites the Supreme Court of New Jersey decision, *State v. Henderson*, 208 N.J. 208 (2011) for the proposition that stress can diminish an eyewitness's ability to recall and make an accurate identification. Defendant also contends that "[n]umerous scientific studies have confirmed that high levels of stress" can negatively impact a witness' ability to make an accurate identification, citing academic articles. Notably, he does not cite any Illinois precedent suggesting that we must discount reliability of a witness' identification in a stressful situation. Further, we note that he did not make such a scientific argument in the trial court, through expert testimony or otherwise. See *People v. Tomei*, 2013 IL App (1st) 112632, ¶ 56 (rejecting scientific argument regarding fourth *Biggers* factor; since "defendant did not present expert testimony, we do not find defendant's argument persuasive that the fourth factor *** should be given little weight.").

¶ 28     In any event, nothing in the record suggests that the stress of the encounter interfered with Helliwell's ability to pay attention. Instead, she offered detailed testimony about the incident, including defendant's appearance, actions, and words to her. The trial court was certainly entitled

to find that this indicated a sufficient degree of attention. See *People v. Blankenship*, 2019 IL App (1st) 171494, ¶ 29 (finding that second *Biggers* factor favored the State where witness "was able to give a detailed account of the events of the robbery and the physical descriptions of both defendant and gun.").

¶ 29    Defendant nonetheless contends that the "lack of specificity of Helliwell's description" "shows that her degree of attention was low." He claims that the "entirety of Helliwell's description of the unmasked offender was that he was African-American, had a medium complexion, short dreadlocks and was wearing all black." We disagree, as defendant ignores Finegan's testimony that she additionally described defendant's weight, height, and estimated him to be about 18 years in age.

¶ 30    Similarly, we reject defendant's suggestion that Helliwell's degree of attention was insufficient because her description was "missing significant details." He points out that Helliwell did not mention the red horseshoes on his sweatshirt, and that she described him as wearing black pants or jeans when, in fact, he was wearing green pants with a logo on them. He also claims a discrepancy between her testimony that his hair was in short dreads, and Finegan's testimony that she described him as having braids. We reiterate that we do not substitute our judgment for that of the trier of fact, who is responsible for assessing what weight should be afforded to any discrepancies in the evidence. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006) (the weight to be given witness testimony, including "resolution of inconsistences and conflicts in the evidence," is the responsibility of the trier of fact. [Citations.]"). In this case, the alleged minor discrepancies or omissions did not preclude the trial court from crediting Helliwell's identification. See *People v. Slim*, 127 Ill. 2d 302, 309 (1989) ("The presence of discrepancies or omissions in a witness'

description of the accused do not in and of themselves generate a reasonable doubt as long as a positive identification has been made. [Citation.]").

¶ 31    For the same reasons, we reject defendant's suggestion that the third *Biggers* factor—accuracy of the prior description—weighed against Helliwell's identification. On that factor, defendant restates his contention that Helliwell's description was too general and did not include significant details such as the red graphics on his clothing. As discussed, the court heard evidence that Helliwell described several aspects of defendant's appearance to police, including his height, weight, complexion, and approximate age. See *Blankenship*, 2019 IL App 171494, ¶ 31 (in discussing third factor, noting that victim identified "not only defendant's clothing but also his height, build and complexion."). Moreover, Helliwell unequivocally testified that she viewed defendant's face. See *id.* ("even though [witness] gave police only a general description of the robber, his identification of defendant as the robber based on his recognition of defendant's face supports the accuracy of his identification." (citing *Tomei*, 2013 IL App (1st) 112632, ¶¶ 51-52)).

¶ 32    With respect to the fourth *Biggers* factor, defendant does not dispute Helliwell's certainty in her identification. Rather, he argues that this is "the least important" of the *Biggers* factors, as it has been "discredited" by a "large body of social science research" disputing the relationship between a witness' confidence and the accuracy of identification. However, defendant did not present expert testimony at trial on this subject; in such situations "[t]his court has found defendant's argument unpersuasive where no such evidence was presented to support a finding that the witness's certainty should be given little weight." *Blankenship*, 2019 IL App (1st) 171494, ¶ 32 (citing *Tomei*, 2013 IL App (1st) 112632, ¶ 56).

¶ 33    Defendant acknowledges, and we agree, that the fifth and final *Biggers* factor—the length of time between the crime and the identification—supports Helliwell's identification. However,

he argues this factor is "more than offset by the extremely suggestive nature" of the initial showup identification. In setting forth this argument, defendant does not cite any case suggesting that the fifth *Biggers* factor should be discounted in cases involving a showup identification. Importantly, our supreme court has "approved showups near the scene of the crime as acceptable police procedure designed to aid police in determining whether to continue or end the search for the culprits." *Jones*, 2017 IL App (1st) 143766, ¶ 27 (quoting *People v. Lippert*, 89 Ill. 2d 171, 188 (1982)).

¶ 34   In sum, the five *Biggers* factors support the trial court's decision to find Helliwell's identification to be credible and reliable. We reiterate that a single witness' identification "is sufficient to sustain a conviction if the witness viewed the accused under circumstances permitting a positive identification." *People v. Joiner*, 2018 IL App (1st) 150343, ¶ 47; see also *Siguenza-Brito*, 235 Ill. 2d at 228 ("the testimony of a single witness, if positive and credible, is sufficient to convict, even though it is contradicted by the defendant."). Here, the record does not compel the conclusion that no reasonable person could accept Helliwell's testimony beyond a reasonable doubt. See *Charles*, 2018 IL App (1st) 153625, ¶ 25. Accordingly, we find the evidence presented sufficient to sustain defendant's conviction.

¶ 35   In reaching this conclusion, we reject defendant's claim that the trial court's "misremembrance of the evidence" contributed to its reliance on Helliwell's identification. Specifically, he claims the trial court incorrectly stated that Helliwell was "looking at the first offender as he approached her" when "[i]n fact, Helliwell testified that she did not look at this person until he was next to her" and "[i]t was only when this person spoke to her that she turned to face him." After reviewing the transcript, we agree with the State that the trial court did not "misremember" the evidence. In discussing Helliwell's testimony, the trial court stated:

"She saw a man walking from that viaduct toward her. He was on the sidewalk, and

he said, hey, to her. She looked at him, and *** the man seemed to be -- seemed

like he wanted to ask a question or direction. She was now looking at him as he

approached."

Although Helliwell may not have explicitly testified that she faced defendant as he approached, this could be reasonably inferred from her testimony that she turned toward defendant after she heard him speak to her. In any event, this alleged "misrememberance" is at most a minor misstatement that could not constitute error. See *People v. Williams*, 2017 IL App (1st) 150795, ¶ 39 ("if a trial court's 'minor misstatement' of the evidence did not affect the basis of the ruling, it does not violate due process." (citing *People v. Schuit*, 2016 IL App (1st) 150312, ¶ 107)).

¶ 36    Likewise, we reject defendant's arguments that the trial court was "arbitrary" in declining to accept defendant's "unrebutted" testimony about his activities on the evening of the robbery. Clearly, his testimony was not "unrebutted" in light of Helliwell's unequivocal identification of him. It was the responsibility of the trial court, sitting as the trier of fact, to determine the credibility of the witnesses and resolve conflicts in the evidence. *Siguenza-Brito*, 235 Ill. 2d at 228. Defendant essentially asks us to substitute our judgment for that of the trial court with respect to witness credibility, which we cannot do. *Id.* at 224-25.

¶ 37    Defendant next challenges his sentence of four years of "gang probation," *i.e.*, the adult probation program overseen by the Gang Intervention Unit of the Adult Probation Department, which entailed certain conditions beyond those of standard probation. Specifically, the record reflects that defendant was subject to special conditions, including: disassociating from all known gang members and refraining from gang activity; refraining from possession of gang paraphernalia or clothing; complying with a 7 p.m. curfew; submitting to searches when requested by the

probation officer; submitting to breath, urine, or blood tests for drugs or alcohol; not leaving the state without permission; performing 130 hours of community service; verifying employment monthly; and attending counseling, treatment or educational programs as directed by probation officers.

¶ 38    Defendant's challenge to his sentence raises two distinct arguments. First, he claims that "gang probation" is inappropriate because there was no evidence that he was a gang member, as necessary to "qualify" him for that particular program. Separately, he argues that the four-year probation period was excessive in consideration of mitigating factors and his rehabilitative potential, as well as the fact that he had already spent nine months in pretrial custody. On these grounds, he requests that we reduce his sentence or remand for resentencing.

¶ 39    Defendant acknowledges that he did not preserve these arguments for review because he did not move to reconsider his sentence. See *People v. Hillier*, 237 Ill. 2d 539, 545 (2010) (to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required). Nonetheless, he urges application of the plain-error doctrine, which "bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved claims of error in specific circumstances." *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). Alternatively, defendant contends that his trial counsel's failure to preserve his sentencing claims constitutes ineffective assistance of counsel.

¶ 40    To obtain relief under the plain-error doctrine, "a defendant must first show that a clear or obvious error occurred. [Citation.] In the sentencing context, a defendant must then show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing. [Citation.]" *Hillier*, 237 Ill. 2d at 545. Defendant contends that he is entitled to relief under either prong. However, "[t]he first step of

plain-error review is determining whether any error occurred." *Thompson*, 238 Ill. 2d at 613. Thus, we first consider whether the trial court erred. Here, we find no error.

¶ 41     We first reject defendant's contention that the court was not empowered to impose conditions of "gang probation" because of lack of proof that he was in a gang. Defendant emphasizes that his probation was supervised by the Gang Intervention Unit and refers us to language (formerly) appearing on the Circuit Court of Cook County website stating that the Gang Intervention Unit serves "probationers who are gang members."[4] However, as the State points out, no statute prevents that unit from supervising defendant's probation, or requires proof of gang activity as a prerequisite to imposing such conditions. Rather, a trial court's imposition of particular probation conditions is discretionary.

¶ 42     Section 5-6-3(b) of the Unified Code of Corrections enumerates a number of permitted conditions of probation which may be imposed "in addition to other reasonable conditions relating to the nature of the offense or the rehabilitation of the defendant as determined for each defendant in the proper discretion of the Court." 730 ILCS 5/5-6.3 (West 2016). Thus, "[t]he statute gives the trial court the discretion to impose additional conditions of probation provided that they are reasonable." *People v. Meyer*, 176 Ill. 2d 372, 378 (1997)). "Generally, the trial court is afforded wide discretion in fashioning the conditions of probation for a particular defendant. [Citation.]" *Id.* A trial court abuses its discretion only where its ruling is arbitrary, fanciful, or unreasonable or

---

[4] According to defendant's opening brief and the material included in its appendix, as of April 2019, the website for the circuit court included a separate description for the adult probation program overseen by the Gang Intervention Unit, stating that "The Gang Intervention Unit provides intensive supervision *** for probationers who are gang members." However, as of December 24, 2020 the website no longer includes a separate discussion of particular probation program. See http://www.cookcountycourt.org/ABOUT-THE-COURT/Office-of-the-Chief-Judge/Probation-Departments/Probation-for-Adults/Adult-Probation-Department/Programs.

where no reasonable person would take the view adopted by the trial court. *People v. Tolefree*, 2011 IL App (1st) 100689, ¶ 53.

¶ 43    Given these authorities, we find no merit to defendant's contention that he does not "qualify" for "gang probation." We also cannot say that any of the probation conditions imposed are unreasonable, given the serious nature and circumstances of the offense, *i.e.* that he and another person robbed Helliwell and pushed her to the ground.[5]

¶ 44    Having rejected defendant's preliminary argument that he did not qualify for "gang probation," we turn to his claim that the length of his sentence was otherwise excessive. In making this argument, he claims that the four-year term of probation did not reflect his "clear rehabilitative potential" and numerous mitigating circumstances, including his young age at the time of the offense, his lack of criminal history, his education and work history, and the letters submitted on his behalf attesting to his good character. He also notes that he spent nine months in custody.

¶ 45    A trial court must impose a sentence that balances the seriousness of the offense and the defendant's rehabilitative potential. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46. In doing so, the court must consider aggravating and mitigating factors including "the nature and circumstances of the crime, the defendant's conduct in the commission of the crime and the defendant's personal history, including his age, demeanor, habits, mentality, credibility, criminal history, general moral character, social environment and education." *Id.* Because the trial court is in the best position to weigh these factors, the sentence imposed will not be reversed absent an abuse of discretion. *Id.* The reviewing court "must not substitute its judgment for that of the trial court merely because it

---

[5] We further note that defense counsel specifically mentioned that defendant grew up in a "crime-infested neighborhood where gang activity is rampant," which could reasonably have raised the court's concern that he was susceptible to the influence of gangs.

would have weighed these factors differently." *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). "A sentence within statutory limits will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *People v. Busse*, 2016 IL App (1st) 142941, ¶ 20.

¶ 46    After reviewing the record, we find defendant's sentence, which was well within statutory limits, was not excessive or an abuse of discretion. Defendant was convicted of robbery, a Class 2 offense. 720 ILCS 5/18-1(c) (West 2016). A Class 2 felony is subject to a determinate sentencing range of three years to seven years' imprisonment and is subject to a period of probation not exceeding four years. 730 ILCS 5/5-4.5-35(b), (d) (West 2016).

¶ 47    Defendant received four years of probation, rather than any determinate prison sentence. As his sentence was well within the statutory range, it is presumably proper and will not be disturbed absent an affirmative showing that it was "at variance with the purpose and spirit of the law or is manifestly disproportionate to the nature of the offense." *Knox*, 2014 IL App (1st) 120349, ¶ 46.

¶ 48    Defendant cannot make that showing. He notes that he "does not seek to minimize the seriousness of the offense." Nonetheless, he contends the four-year term of probation fails to give adequate consideration to his youth, lack of criminal history, and rehabilitative potential, as well as the time he previously spent in pretrial custody in connection with this case.

¶ 49    However, the record reflects that the court did take into account various mitigating factors in exercising its discretion not to impose any prison term. Indeed, the trial court commented that it was "taking a chance" on defendant by only imposing probation. In imposing sentence, the court also specifically noted that it had considered the contents of the PSI and the letters submitted in support of defendant. These materials included the complained-of factors set forth by defendant,

*i.e.*, his youth, lack of criminal history, and rehabilitative potential. Given this record, defendant essentially asks us to reweigh the sentencing factors to conclude that the trial judge abused its discretion in awarding a four-year term of probation, notwithstanding the seriousness of the offense. This we cannot do, even assuming that we would have assessed the relevant factors differently. *Stacey*, 193 Ill. 2d at 209.

¶ 50    As we have rejected defendant's claims of error regarding his sentence, we need not additionally discuss whether either prong of plain error review applies. See *People v. Williams*, 2017 IL App (1st) 150795, ¶ 40 ("There was no error, let alone 'plain' error, and so we need not go further in the plain error analysis.").

¶ 51    Similarly, we reject defendant's suggestion that his trial counsel was ineffective for failing to properly preserve his sentencing challenges. A defendant alleging ineffective assistance of counsel must prove prejudice, such that "absent counsel's deficient performance there is a reasonable probability that the result of the proceeding would have been different." *People v. Evans*, 209 Ill. 2d 194, 219-20 (2004) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). As we have rejected his claims of error with respect to sentencing, defendant cannot demonstrate any reasonable probability that the result would have been different, even had his trial counsel preserved these challenges. See, *e.g.*, *People v. Brown*, 2017 IL App (1st) 142877, ¶ 66 (counsel not ineffective for failing to file motion to reconsider sentence where there was no reasonable probability that the sentence would have been different even if motion had been filed). As defendant cannot demonstrate prejudice, his claim of ineffective assistance is without merit.

¶ 52    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 53    Affirmed.

¶ 54    JUSTICE MARTIN, specially concurring:

¶ 55    I wholly concur with my colleague's well-reasoned decision. I specially concur to point out the importance that the trial court make a sufficient record to support its reasoning when sentencing defendants. It is well settled that courts have broad discretion in imposing conditions of probation. *People v. Meyer*, 176 Ill. 2d 372, 378 (1997). However, our supreme court has determined that this discretion is not without limitation. *In re J.W.*, 204 Ill. 2d 50, 77 (2003). Special conditions of probation must be reasonably tailored to the nature of the offense for which the probationer was convicted. See *People v. Goossens*, 2015 IL 118347, ¶ 15. Here, Scott complains that he was sentenced to "gang probation," despite there being no indication he was involved with gangs. The court, referencing a statement by defense counsel, stated: "despite the fact that you are in an area that somebody characterized, infested with crime, that's the deal." Nothing else in the record seems to support the court's determination that "gang probation" was warranted for this probationer. While acknowledging the broad discretion possessed by the trial court when sentencing, trial judges are encouraged to make certain the record supports the imposition of any special conditions of probation.