2016 IL App (1st) 160379

No. 1-16-0379

Fifth Division
August 12, 2016

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| *In re* J.J., a Minor | ) | |
| | ) | Appeal from the Circuit Court |
| (The People of the State of Illinois, | ) | of Cook County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | No. 15 JD 2762 |
| v. | ) | |
| | ) | |
| J.J., a Minor, | ) | The Honorable |
| | ) | Terrence V. Sharkey, |
| Respondent-Appellant). | ) | Judge Presiding. |
| | ) | |

_____

JUSTICE GORDON delivered the judgment of the court, with opinion.
Presiding Justices Reyes and Justice Lampkin concurred in the judgment and opinion.


**OPINION**


¶ 1        Following a bench trial, defendant J.J., a minor, was adjudicated delinquent of the aggravated robbery of Chitra Gulati and adjudged a ward of the court. The trial court considered the sentencing for both this offense and an unrelated armed robbery during the same sentencing hearing. After imposing five years of probation for the unrelated offense, the trial court found it unnecessary to impose an additional sentence in the case at bar. See *In re. J.J.*, 2016 IL App (1st) 160378-U. On this direct appeal, defendant claims that the

victim's identification was too unreliable to prove his guilt beyond a reasonable doubt, where the incident lasted less than a minute, where it was dark outside, and where the victim had a gun pointed at her during the encounter. For the reasons set forth below, we affirm the trial court's adjudication.

¶ 2                                    BACKGROUND

¶ 3     On August 25, 2015, defendant was charged with the aggravated robbery of Chitra Gulati which occurred on July 25, 2015. Defendant was adjudicated delinquent on November 10, 2015, after a bench trial and was adjudged a ward of the court on February 9, 2016. This direct appeal follows.

¶ 4                            I. Chitra Gulati's Testimony

¶ 5     The victim testified that she lives near Damen and Chicago Avenues in Chicago. On July 24, 2015, she was taking a walk in her neighborhood while listening to music through her headphones on her iPhone 5s. At approximately 11:10 p.m., while walking north on Winchester Street toward the intersection of Winchester and Iowa Streets, the victim noticed three boys on the sidewalk approximately 65 feet away. When she walked past them, one of the boys said something to the victim, and she removed her headphones to hear what he said. The boy standing on her left asked her for the time, so she removed her phone from her yoga pants and brought it in front of her face to read it, and then told the boy the time. Then a second boy, whom she later identified as defendant, pointed a gun toward the victim's forehead, cocked the gun, and told her to give him everything she had. The victim testified that defendant was wearing a "floppy fisherman's hat," and was standing on her left about three feet away. The victim removed her headphones and handed the phone to defendant, but did not let go of it right away; she was pleading with defendant not to take it. However, she

2

let go of the phone after hearing the cocking of another gun from the direction of the first boy who had asked her for the time, and she testified that as she handed the phone to defendant, she was "looking at his face all the time." Defendant then asked if the victim had anything else in her breasts, and pointed the gun toward them. Defendant stepped closer and reached out to touch them to see if anything was in the victim's shirt. The victim responded no, and defendant and the other two boys ran south, in the opposite direction from where the victim had been heading.

¶ 6     The victim testified that, as a reflex, she began to run after them until defendant turned around and told her not to run behind them, at which point she went home and her husband called the police. The victim testified that the lighting conditions at the time of the offense were fair, stating that "it was not very dark, it was not pitch dark, but it was nighttime," and that there was light coming from the houses as well as from the street lights. When asked how long the interaction lasted, the victim testified that it was probably a minute or two, but that she felt like she was "frozen in time."

¶ 7     The victim testified that three police officers came to her house and took her statement. She met with the police again at her house a few days later on July 28, 2015, and the police brought an array of photos from which the victim identified defendant. The victim was shown three groups of photos, and she identified a photo in the third group as the person who had robbed her. She signed the photo, which she identified as a photograph of the offender and which was identified as People's exhibit No. 1. The victim also made an in-court identification of defendant.

¶ 8     A video recording of the victim walking on the street prior to and immediately after the incident was played in open court and identified as People's exhibit No. 2. The video was

recorded by a surveillance camera belonging to a house near where the offense occurred. The victim testified that the video was taken approximately four houses away from where the robbery occurred, and it showed her on the sidewalk walking toward the intersection of Winchester and Iowa Streets, and defendant, wearing the floppy hat she had previously described, standing with two other boys.

¶ 9    The surveillance video depicts the area outside of a particular house and frames a portion of the sidewalk. It shows three boys who enter the frame, and then turn around and walk back in the direction from which they had come, exiting the left side of the frame. The video, which depicts the date and time, shows that this occurred on July 25, 2015 at 11:10 p.m. Approximately two minutes later, the victim walks by listening to her iPhone, walking from the right to the left side of the frame. About a minute later the same three boys run past the camera again, re-entering the frame from the left and exiting the frame on the right. The victim is shown running after the boys, trailing a bit behind. It is too dark to discern the boys' faces clearly.

¶ 10    On cross-examination, the victim testified that she was only 60% sure at her photo array identification because she was nervous and scared. On redirect, the victim testified that her identification was tentative because defendant had a hat on at the time of the robbery, but not in the photo array, and that she remembered "seeing the entire physical person, not just a face." The State moved exhibit Nos. 1 and 2 into evidence, and the trial court admitted them, and the State rested. The trial court denied defendant's motion for a directed finding, and defendant chose not to exercise his right to testify.

4

¶ 11                                        II. Closing Arguments

¶ 12        Defense counsel argued that "this case is a clear example of an identification case," and directed the trial court's attention to the five factors used to determine the reliability of an identification. Defense counsel argued that the identification was not reliable because the victim had only a short amount of time to view the offender, from an angle, and without a great degree of attention because she was scared. Further, defense counsel argued that the victim's identification of defendant in the photo array was unreliable because she testified that she was only 60% sure at the time, that her in-court identification was unreliable because it was made months after the incident occurred, and that the State had failed to establish that the photo the victim identified was actually a photo of defendant. Therefore, the defense argued, the State failed to meet its burden of proof.

¶ 13        The State argued that the victim's identification was reliable because there was a fair amount of lighting; the victim was in close proximity to defendant; and she testified that time froze when she looked at defendant as he took her iPhone, and that her focus was heightened by her fear rather than diminished. The State further argued that the reason the victim was only 60% sure of her identification at the photo array was because she could not observe his entire body to compare to what she remembered from the incident. The State also noted that, due to the victim's in-court identification of defendant, it was not necessary to rely on her identification during the photo array.

¶ 14                                         III. Adjudication

¶ 15        The trial court found that the victim's testimony was credible, that the video corroborated her testimony, and that the State had established defendant's guilt beyond a reasonable doubt. After considering all five *Biggers* factors (*Neil v. Biggers*, 409 U.S. 188, 199 (1972)), the

trial judge was convinced by the victim's testimony, and found that she "locked in and loaded in her mind that this was the offender that committed this crime." The court sentenced defendant on this offense and another unrelated armed robbery during the same hearing. First, the court sentenced defendant to five years of probation on the other robbery charge (15 JD 2457), and then made a finding that it was not necessary to place him on probation for two separate offenses. The trial court adjudged defendant a ward of the court but did not issue a sentence in the case at bar. This direct appeal follows.

¶ 16                                ANALYSIS

¶ 17       On this direct appeal, defendant claims that the State failed to prove him guilty of aggravated robbery beyond a reasonable doubt because the eyewitness identification was not sufficiently reliable. Defendant claims the identification was unreliable because of (1) the dim lighting at the time of the offense, (2) the short period of time during which the offense occurred, (3) the victim's lack of attention due to her fear, and (4) her tentative identification during the photo array. For the reasons set forth below, we find that the victim's identification was sufficiently reliable and affirm defendant's adjudication of delinquency.

¶ 18                           I. Standard of Review

¶ 19       When reviewing a claim of insufficient evidence, the court must view the evidence in the light most favorable to the State and determine if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Wheeler*, 226 Ill. 2d 92, 114-15 (2007); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). If the court answers this inquiry in the negative, the defendant's conviction must be reversed. *People v. Woods*, 214 Ill. 2d 455, 470 (2005).

¶ 20    The same standard applies in delinquency proceedings: the State must prove the essential elements of the offense alleged in the delinquency petition beyond a reasonable doubt. *In re Jonathon C.B.*, 2011 IL 107750, ¶ 47 (citing *In re W.C.*, 167 Ill. 2d 307, 336 (1995)). The reasonable doubt standard applies whether the evidence is direct or circumstantial. *In re Jonathon C.B.*, 2011 IL 107750, ¶ 47 (citing *People v. Campbell*, 146 Ill. 2d 363, 374 (1992)). We will not reverse a finding of guilt "unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *People v. Collins*, 106 Ill. 2d 237, 261 (1985). In a bench trial, it is the trial judge who resolves any credibility conflicts in the evidence. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). A reviewing court does not retry the defendant or substitute its judgment for that of the trier of fact with regard to the credibility of witnesses or the weight to be given to each witness's testimony. *People v. Jackson*, 232 Ill. 2d 246, 281 (2009); *People v. Ross*, 229 Ill. 2d 255, 272 (2008).

¶ 21                               II. Factors of Reliability

¶ 22    The five factors set forth by the United States Supreme Court for assessing the reliability of an identification are (1) the witness's opportunity to view the suspect during the offense, (2) the witness's degree of attention, (3) the accuracy of any prior descriptions provided, (4) the witness's level of certainty at the time of the identification procedure, and (5) the length of time between the crime and the identification. *Biggers*, 409 U.S. at 199. These "*Biggers* factors" are also used by Illinois courts for analyzing an identification's reliability. *People v. Jackson*, 348 Ill. App. 3d 719, 739-40 (2004).

¶ 23    Defendant cites an additional case, *People v. Graham*, 179 Ill. App. 3d 496, 505 (1989), which includes a sixth factor: (6) any acquaintance with the offender before the crime. In the

case at bar, the trial court did not consider this factor because there was no evidence of an acquaintance.

¶ 24     In order to emphasize the unreliability of eyewitness testimony, defendant also cites *People v. Tisdel*, 338 Ill. App. 3d 465, 467 (2003) (where we found that "numerous studies in the area of eyewitness psychology indicate that there is significant potential for eyewitness error"). See also *People v. Lerma*, 2016 IL 118496, ¶ 24 (" 'eyewitness misidentification is now the single greatest source of wrongful convictions in the United States' " (quoting *State v. Dubose*, 699 N.W. 2d 582, 591-92 (Wis. 2005))).

¶ 25                                   III. Opportunity to View

¶ 26     The first *Biggers* factor is the witness's opportunity to view the offender during the commission of the offense. *Biggers*, 409 U.S. at 199. Defendant asserts that the witness did not have a sufficient opportunity to view the offender because it was dark and the encounter lasted only one to two minutes. The State argues that, according to the victim's testimony, she observed the offender closely and with a great deal of attention.

¶ 27     A positive identification by a single eyewitness who had sufficient opportunity to observe the offender is sufficient to support a conviction. *People v. Piatkowski*, 225 Ill. 2d 551, 556 (2007). "When considering whether a witness had an opportunity to view the offender at the time of the offense, courts look at 'whether the witness was close enough to the accused for a sufficient period of time under conditions adequate for observation.' " *People v. Tomei*, 2013 IL App (1st) 112632, ¶ 40 (quoting *People v. Carlton*, 78 Ill. App. 3d 1098, 1105 (1979)).

¶ 28     In the case at bar, the victim testified that there was a "fair" amount of lighting from the streetlights and houses and that, although the encounter was brief, she felt that when she handed her phone over to defendant, that moment was "frozen in time." The State argues that

8

defendant was close enough to reach out his arm and touch the victim's chest with the gun, and she testified that she continued to look at his face during this close interaction. Based on this testimony, we find that a rational trier of fact could have found that the witness had a sufficient opportunity to view her offender.

¶ 29                             IV. Witness's Degree of Attention

¶ 30         The second *Biggers* factor is the victim's degree of attention at the time of the offense. *Biggers*, 409 U.S. at 199. Defendant argues that the victim was scared and distracted by the gun pointed at her, which caused her not to pay adequate attention to the characteristics of the offender. Illinois courts have recognized that the stress of a crime can contribute to the unreliability of eyewitness testimony. *People v. Lerma*, 2016 IL 118496, ¶ 28. Defendant also cites case law noting that there is a tendency of victims to focus on weapons rather than the offender's face. *People v. Allen*, 376 Ill. App. 3d 511, 525 (2007). See also *Lerma*, 2016 IL 118496, ¶ 26 (listing the presence of a weapon as a factor "potentially contributing to the unreliability of eyewitness testimony"). The victim's testimony indicates that her fear might have affected her judgment, such as her decision to run after an armed offender. However, her testimony was also detailed and descriptive and indicated that she was acutely aware of what was happening during the encounter. The victim testified that she was looking at the offender the entire time, she described the distinct hat he was wearing, and she identified where each offender was positioned in respect to where she was standing. The video corroborated her testimony that there were three offenders, the directions in which they moved, and that she attempted to chase after them. The video, however, does not depict the offense. Based on her testimony, and the video entered into evidence, a rational trier of fact could find her identification of defendant to be sufficiently reliable.

9

¶ 31                                    V. Prior Identification

¶ 32        With respect to the third *Biggers* factor, the accuracy of any prior descriptions provided (*Biggers*, 409 U.S. at 199), defendant argues that this factor should be viewed as neutral because the victim described only defendant's hat; and her description of the offenders' clothing was very general. The victim's only prior description of the offender to the police was defendant's hat. However, she specifically described the floppy, colorful, quilted fisherman's hat which matched the hat depicted in the video. The victim was also able to identify the offender in a photo array immediately after the offense occurred, as well as in court. Thus, her prior description supports her reliability as a witness.

¶ 33                                    VI. Level of Certainty

¶ 34        The fourth *Biggers* factor is the witness's level of certainty at the time of the identification. *Biggers*, 409 U.S. at 199. The victim testified on cross-examination that she was only 60% sure of her identification during the photo array at her home after the robbery occurred. She testified that her identification was tentative because she remembered his entire body and the pictures only showed his face. The victim was also very deliberate in her identification and looked at two groups of photos without identifying anyone before finally identifying the offender in the third group of photos. Further, the trial court evaluated her identification in the courtroom to be "positive" and "absolute." Therefore, the victim's level of certainty makes her identification reliable.

¶ 35                                    VII. Length of Time

¶ 36        The fifth *Biggers* factor is the length of time between the occurrence and the identification. *Biggers*, 409 U.S. at 199. In the case at bar, the victim identified defendant in a photo array only four days after the offense occurred. She testified that she was only 60%

sure at the time of the photo array. However, the victim identified defendant in court again in November. The offense occurred in July, but the trial court determined that, despite the significant length of time between the offense and the in-court identification, the victim had the identity "locked in and loaded in her mind," and that the time that passed did not have an effect on her reliability. Further, the photo array identification was consistent with her later identification in open court, indicating that the length of time between the offense and the in-court identification did not make her identification less reliable.

¶ 37                                    VIII. Prior Acquaintance

¶ 38        Although the trial court did not consider this factor in determining the reliability of the identification, we will consider this factor. *Graham*, 179 Ill. App. 3d at 505. The victim testified that she was not acquainted with defendant. The United States Supreme Court has noted that the "identification of strangers is proverbially untrustworthy." *United States v. Wade*, 388 U.S. 218, 228 (1967). While the victim had never met defendant prior to the offense, which makes her less likely to be able to accurately identify him, the video corroborated her description of both the events and defendant's hat, thereby lending additional credibility to her testimony.

¶ 39                                         CONCLUSION

¶ 40        For the foregoing reasons, we affirm defendant's adjudication of delinquency for aggravated robbery. After viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found beyond a reasonable doubt that defendant committed aggravated robbery. The evidence was sufficient to support defendant's adjudication of delinquency where the victim had sufficient opportunity to view

the offender, where the victim identified defendant in open court and in a pretrial photo array, and where there was a video that corroborated the victim's testimony.

¶ 41      Affirmed.