2021 IL App (1st) 182614-U
No. 1-18-2614

SECOND DIVISION
August 17, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 13 CR 2585 |
| | ) | |
| EARISS BRENT, | ) | Honorable |
| | ) | Erica L. Reddick, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

**ORDER**

¶ 1     *Held*:  We affirm defendant's convictions for armed robbery and aggravated vehicular hijacking over his contention that the State failed to prove him guilty beyond a reasonable doubt.

¶ 2     Following a bench trial, defendant Eariss Brent was convicted of aggravated vehicular hijacking (720 ILCS 5/18-4(a)(4) (West 2012)) and armed robbery (720 ILCS 5/18-2(a)(2) (West 2012)) and sentenced to concurrent terms of 22 and 21 years' imprisonment, respectively. On appeal, defendant contends his convictions should be reversed because the State failed to prove

him guilty beyond a reasonable doubt where the eyewitness identification of him as the offender was not reliable. We affirm.

¶ 3    Defendant was charged with two counts of armed robbery, one count of aggravated vehicular hijacking, one count of attempt aggravated vehicular hijacking, and two counts of aggravated unlawful restraint, stemming from the October 12, 2012, robbery of Casey Diers and Steven Ferrier. Defendant's bench trial was severed from but simultaneous to co-defendant Dale Sealey's jury trial.[1]

¶ 4    At trial, Casey Diers testified that he was employed by Design Lab Chicago, which was located at the intersection of Albany Avenue and Carroll Avenue in Chicago. Steven Ferrier was one of his colleagues. On October 12, 2012, Diers and Ferrier left work at approximately 5:50 p.m. It was still daylight with no precipitation. Diers walked to his car, which was parked on Carroll Avenue, and Ferrier walked to his car on Albany Avenue, which was directly across the front door of the building.

¶ 5    When Diers got to his car and sat inside, a large man ran across the street and placed his body inside the door, so Diers could not close it. Diers identified this man in court as Sealey. Sealey, who was holding a metallic-colored gun in one of his hands, with the barrel pointed at Diers's torso, said "give me your wallet." Diers testified that Sealey's face was not more than "a couple of feet" from him and Sealey was not wearing a mask. Diers handed his wallet to Sealey, who looked inside of it.

---

[1] Sealey appealed and we affirmed his convictions in *People v. Sealey*, No. 1-14-3968 (2017) (unpublished order under Illinois Supreme Court Rule 23).

¶ 6    Sealey then asked Diers who his "friend" was and told him to get out of the car. Diers did so, and saw that Ferrier had driven his car to less than a car length behind him. Diers walked to Ferrier and informed him that they were "getting robbed." Sealey was behind Diers at which point two other men approached them, and the three men took things from Ferrier's pockets and car. Sealey told one of the men to take Diers and Ferrier to the sidewalk as the other two men went through Diers's car, including the trunk and back seats. In court, Diers identified the man who escorted him and Ferrier to the sidewalk as defendant.

¶ 7    On the sidewalk, defendant went through Diers's pockets, but did not take anything at that time. Defendant "watch[ed]" Diers and Ferrier while Sealey and the other man went through the trunk of Diers's car. Diers was "a couple feet away" from defendant who was not wearing any face covering, and he was able to see defendant's face. Diers described the third man as being "a younger guy" who was shorter than the gunman and also black. Diers had never encountered the men previously.

¶ 8    The three men then got into Diers's car and drove westbound on Carroll Avenue before turning left. After they drove away, Diers returned to his office and called the police, who arrived 15 minutes later. He also noticed security cameras for the building across the street, and contacted Chris Loutris, the building manager, to gain access to the videos. Diers downloaded the relevant videos onto flash drives which he gave to Detective Smith. Diers identified the flash drive in court, and video footage was published. Diers also identified a photograph of the incident, and annotated it, identifying the gunman and the man on the sidewalk.[2]

---

[2] On August 20, 2019, defendant filed, and subsequently moved to withdraw, a motion to direct the circuit court clerk to prepare and release exhibits in their original form. On April 28, 2021, this court granted defendant's motion to withdraw. Accordingly, the exhibits are not before this court on review.

¶ 9    Diers went to the police station to recover his vehicle in the early morning hours of October 13, 2012. He next went to the police station on November 28, 2012 to view a photo array wherein he identified defendant. Diers identified in court the form he signed and the photograph of defendant he identified.

¶ 10    On cross-examination, Diers stated the incident took about three minutes. He gave a description of the men to the police officers who arrived at the scene. Diers stated he did not give the police specific ages of the men, and informed them that "one was a little bit older the other two a little younger, one of them was a bigger guy, they were all three black and the gunman had facial hair." The men were wearing hats so he was unable to see their hair. Diers did not remember giving a description of the heights or weights of the men, but recalled he said "one of them was a larger gentleman."

¶ 11    Before the interaction with the gunman, Diers had seen three people, but had not been paying attention to them. The other two men did not appear to have guns. During the incident, Diers watched the gunman's face as well as the other two men, who went through Ferrier's pockets and vehicle. He explained that he was worried about what the man with the gun would do. Diers stated that, during the time defendant was going through his pockets, "one of the things" he was paying attention to was Sealey with the gun at the car. When Diers went to the police station, the police did not tell him anyone had been arrested for occupying his car and did not ask him to view a suspect.

¶ 12    At some point after Diers got his car back, he went to Branch 43 Misdemeanor court for a suspect that was accused of trespass to his car. Defendant was in court, but his case was not called and he did not step up in front of the bench. The prosecutor spoke with Diers and informed him

that defendant's case would not be called that day. Diers then informed the prosecutor that defendant was a person who had robbed him at gunpoint. After this court date, on November 28, Diers again recognized defendant in a photographic array, and identified him for the detectives. During the robbery, Diers was paying "a lot of attention" to the gunman's face.

¶ 13    On redirect examination, Diers testified that during misdemeanor court he recognized defendant as the man involved in the October 12 robbery but had not been shown any photographic arrays or lineups before then.

¶ 14    Steven Ferrier testified that he was employed by Design Lab in Chicago with Diers. On October 12, 2012, Ferrier left the building at approximately 5:50 p.m. with Diers. He walked to his car, which he had parked on Albany Avenue. He pulled to a stop sign at the intersection of Carroll Avenue and Albany Avenue, when he looked left and saw a "large black man" whom he had never seen before standing in the doorway of Diers's car. Ferrier pulled up behind Diers's car and Diers approached him and said "we're being robbed." Ferrier then saw the man had a gun in his hand, which he pointed toward Ferrier, and told him to empty his pockets, which Ferrier did. Ferrier decided to "stare" at the face of the man robbing him, whom he identified in court as Sealey. At the time Ferrier saw Sealey's face, it was still daylight with no precipitation.

¶ 15    Ferrier did not notice any other people until Sealey asked for Ferrier's car keys, which he could not find, so one of Sealey's "associates" searched him. This person was wearing a "black hooded sweatshirt" and was "black," but Ferrier was not focused on his face, but rather the face of the gunman. Sealey then moved Diers and Ferrier to the sidewalk, at which point the second person searched his car while the third person searched his pockets again. The third person was "short, black" and was wearing a dark green coat with white stripes on it and a hat with ear flaps.

¶ 16    On cross-examination, Ferrier stated the "short man" went with them to the sidewalk, and the tall man in the hooded sweatshirt searched his car.

¶ 17    Pawel Jasiak testified that he owned PJ Satellite, a company in Illinois, which installed camera systems. In June 2012, Christopher Loutris hired Jasiak to replace the old camera system installed at the building at Albany Avenue and Carroll Avenue. The cameras he installed were active and in working condition at the time he installed them. Three cameras were facing Carroll Avenue showing three different angles of the street.

¶ 18    Chris Loutris testified that he was the property manager for the building located at 319 North Albany Avenue and had hired PJ Satellite to install a camera system at the building. The video footage from the three camera angles were published in court.

¶ 19    Chicago police officer Abuzatat testified that on October 12, 2012, he was working at approximately 11:00 p.m. near an intersection at 5600 West Madison Street in Chicago.[3] He was in uniform and driving a marked police car. As he approached the intersection, he saw a car without license plates which was double parked and obstructing traffic. Abuzatat pulled up next to the car and saw four occupants, including defendant, inside. Abuzatat initiated a traffic stop, at which point the vehicle sped through the red light at the intersection. Abuzatat gave chase and his partner was in radio communication with other officers in the area. Two minutes later, Abuzatat relocated to an area near 4441 West Congress Parkway, where he saw the car on a curb with all four doors open and nobody inside the vehicle. Abuzatat saw defendant again in the back of a squad car. He later learned that the car they had been pursuing was owned by Diers.

---

[3] Officer Abuzatat did not state his full name on the record.

¶ 20    On cross-examination, Abuzatat stated that after the car had been stopped, they ran a VIN check, and discovered it had been reported stolen. Abuzatat notified Diers that the police found his vehicle so that he could recover it. He met Diers at the police station, but did not have Diers view the suspect he had apprehended because he "did not want to ruin [the] investigation" by having Diers see defendant before a lineup. Abuzatat asked Diers if he had given the suspect permission to be in possession of the vehicle, and Diers said no and informed him about the robbery. Abuzatat wrote a complaint for Diers to sign regarding the trespass to vehicle, but not a robbery because he was "not fully aware" of the ongoing investigation of the robbery.

¶ 21    Defendant called Chicago police officer Jesus Rivota who testified that during the afternoon of October 12, 2012, at approximately 6:00 p.m., he was dispatched to the scene. Diers and Ferrier told him they had been robbed. Rivota asked them to describe the three individuals involved. They described the first offender as being six feet, 260 pounds, wearing a blue jacket and dark blue jeans. They described the second offender as five feet, two inches, 140 pounds, and wearing a green sweat shirt and dark blue jeans. They described the third offender as five feet, eleven inches, 160 pounds, and wearing a dark blue shirt and dark blue jeans. They also described all the offenders as being between the ages of 19 and 22 and all were of a dark complexion. Neither gave any specific facial characteristics about any of the offenders.

¶ 22    Next, the State presented a stipulation signed by the State and defense counsel for Sealey, with which counsel for Brent participated. The parties stipulated that Sealey was arrested on January 3, 2013, and was fingerprinted and palm printed according to the standards of the booking procedures of the Chicago Police Department at that time.

¶ 23     In closing, defense counsel argued Diers's identification was unreliable, and had been tainted because he had seen defendant in misdemeanor court prior to identifying him in a photo array. Counsel further argued Diers's testimony conflicted with Ferrier's regarding the man who searched them on the sidewalk, with Diers saying defendant searched them, but Ferrier said it was "the short guy." Counsel pointed out that defendant was not five feet, three inches tall, but rather was "the tall guy."

¶ 24     The trial court found defendant guilty of armed robbery and aggravated vehicular hijacking. In announcing its ruling, the court stated Diers made an in-court identification of defendant as being one of the individuals present for the robbery and hijacking, who specifically guarded Diers and Ferrier and went through their pockets. The court noted that Diers testified that defendant did not have anything covering his face and was two feet away from Diers as he went through Diers's pockets. Diers then provided further details of the incident under cross-examination, where he "insisted and persisted" that defendant was not "displayed to him" during the court proceeding. The court also found that Ferrier's testimony corroborated Diers's, although he did not identify defendant specifically. The court noted that the State also presented the photo array identification of defendant, which identified defendant as an individual who participated in the events at issue. The court also pointed out that additional evidence showed defendant's "apprehension" regarding the police officers who stopped his vehicle, as evidence by him fleeing through a red light, causing the officers to give chase. The court found Diers's and Ferrier's testimonies to be credible, with neither being impeached. The court noted that while the additional evidence "raised the specter of the possibility" of concern with the identification process, after considering all of the evidence, it determined there was no taint based on the actions of the police

as well as the court proceedings. The court denied defendant's motion for a new trial and sentenced him to concurrent terms of 22 and 21 years' imprisonment for aggravated vehicular hijacking and armed robbery, respectively.

¶ 25    On July 5, 2017, defendant filed a *pro se* motion for leave to file late notice of appeal based on ineffective assistance of trial counsel wherein he argued that he asked his trial attorney to file a notice of appeal, but his attorney did not do so and did not consult with him about the status of the case. The court treated his motion as a postconviction petition and appointed counsel. On October 5, 2018, counsel filed a motion for leave to file a late notice of appeal. Defendant attached his own affidavit, averring that on October 16, 2014—the date of sentencing—he asked his attorney to file a notice of appeal and his attorney said "okay." In May of 2017, defendant contacted the Office of The State Appellate Defender (OSAD) and learned that an appeal was never filed. Defendant attached to his motion the letter from OSAD, informing him that an appeal was never filed. Defendant also attached an affidavit from Delores Brent, his grandmother, who averred that she was present on the date of sentencing and spoke with defendant's attorney, who informed her that he would be filing an appeal. On November 19, 2018, the circuit court entered an agreed order, granting defendant leave to file the late notice of appeal and allowing him to withdraw his July 5, 2017 postconviction petition without prejudice. Defendant filed a notice of appeal with this court on December 17, 2018.

¶ 26    On appeal, defendant argues that this court should reverse his convictions because the State failed to prove his guilt beyond a reasonable doubt, where Diers's identification of him was unreliable as it contradicted Ferrier's testimony, and Diers admitted his attention was focused on the gunman during the incident. Defendant further argues the identification was tainted because

Diers encountered him in misdemeanor court and knew he had been charged with criminal trespass to his car, so his identification was not based on his memory of the incident but rather this encounter.

¶ 27    As an initial matter, the exhibits were not included in the record on review. Therefore, we are unable to review the video or photographic evidence presented to the trial court. The burden is on defendant to provide a sufficiently complete record to support a claim of error. *Webster v. Hartman*, 195 Ill. 2d 426, 432 (2001); *People v. Resendiz*, 2020 Il App (1st) 180821, ¶ 35. Where the record on appeal is incomplete any doubts arising from the incompleteness of the record will be construed against defendant. See *People v. Boston*, 2016 IL App (1st) 133497, ¶ 62.

¶ 28    The standard of review in challenging the sufficiency of the evidence is "whether, viewing the evidence in the light most favorable to the State, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *People v. Belknap*, 2014 IL 117094, ¶ 67 (quoting *People v. Collins*, 106 Ill. 2d 237, 261 (1985)). The trier of fact, here the trial judge, is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts. *People v. Brown*, 2013 IL 114196, ¶ 48. Therefore, this court will not retry the evidence or substitute its judgment for that of the trier of fact on issues involving the weight of the evidence or credibility of witnesses. *Id*. A reviewing court will not reverse a criminal conviction unless the evidence is "unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *People v. Jackson*, 232 Ill. 2d 246, 281 (2009).

¶ 29    In this case, defendant was convicted of aggravated vehicular hijacking and armed robbery. To sustain defendant's conviction for aggravated vehicular hijacking as charged, the State had to

prove beyond a reasonable doubt that he knowingly took a motor vehicle from Diers by the use of force or by threatening the imminent use of force while he carried on or about his person or was otherwise armed with a firearm. 720 ILCS 5/18-4(a)(4) (West 2012). To sustain defendant's conviction for armed robbery as charged, the State had to prove beyond a reasonable doubt that he knowingly took property from Diers and Ferrier by the use of force or by threatening the imminent use of force while he carried on or about his person or was otherwise armed with a firearm. 720 ILCS 5/18-2(a)(2) (West 2012).

¶ 30    In this court, defendant does not challenge any of the elements of either offense. Rather, he argues the State did not establish he committed the offenses, where Diers did not have an opportunity to observe the offender's face, his testimony conflicted with that of Ferrier, and he admitted his attention was focused on the gunman during the incident. Further, defendant argues Diers's identification was tainted due to seeing him in misdemeanor court in connection with a trespass to vehicle charge involving Diers's car. He also argues his alleged presence in Diers's car is circumstantial evidence he was involved in the incident, and Diers's identification was the only direct evidence linking him to the robbery.

¶ 31    We briefly note that Diers identified defendant, to police and at trial, as one of the three men who took both his car and personal property from him at gunpoint. The testimony of a single witness is sufficient to convict if the testimony is positive and credible, even where it is contradicted by the defendant. *People v. Gray*, 2017 IL 120958, ¶ 36. The trial court found Diers's testimony that defendant robbed him credible and corroborated by Ferrier's testimony. We defer to those credibility determinations. *Brown*, 2013 IL 114196, ¶ 48. Accordingly, Diers's testimony

is sufficient for a rational trier of fact to find the elements of armed robbery and aggravated vehicular hijacking beyond a reasonable doubt.

¶ 32    That said, where a finding of guilty depends on eyewitness testimony, the reviewing court must decide whether a fact-finder could reasonably accept the testimony as true beyond a reasonable doubt. *Gray*, 2017 IL 120958, ¶ 36. Testimony may be found insufficient only "where the record evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt." *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004).

¶ 33    In assessing identification testimony, we consider the following five factors set forth in *Neil v. Biggers*, 409 U.S. 188 (1972): (i) the witness's opportunity to view the defendant during the offense; (ii) the witness's degree of attention at the time of the offense; (iii) the accuracy of the witness's prior description of the defendant; (iv) the witness's level of certainty at the subsequent identification; and (v) the length of time between the crime and the identification. *People v. Slim*, 127 Ill. 2d 302, 308 (1989). "None of these factors, standing alone, conclusively establishes the reliability of identification testimony; rather, the trier of fact is to take all of the factors into consideration." *People v. Joiner*, 2018 IL App (1st) 150343, ¶ 47 (citing *Biggers*, 408 U.S. at 199-200). For the following reasons, we find the *Biggers* factors support the reliability of Diers's identification of defendant as one of the men who robbed him and stole his car.

¶ 34    With respect to the first *Biggers* factor, Diers had ample opportunity to view defendant during the incident. Diers testified that the incident took approximately three minutes during daylight hours with no precipitation. He further testified that he was "a couple feet away" from defendant and his face was uncovered throughout the entire encounter. Diers recounted in detail the chain of events, and the participation of each of the three men. A positive identification need

not be based upon perfect conditions for observation, nor does the observation have to be of a prolonged nature. *People v. Williams*, 143 Ill. App. 3d 658, 662 (1986).

¶ 35    Defendant argues Diers did not have the opportunity to view him during the incident because his testimony conflicted with Ferrier's regarding which man escorted them to the sidewalk. Diers testified it was defendant who escorted them to the sidewalk, while Ferrier, who did not remember this man's face, testified it was the third, shorter man. The trial court found both Diers and Ferrier to have testified credibly with no impeachment regarding the incident and it specifically commented on Diers's ability to see defendant's face. We will not substitute our judgment for that of the trial court regarding its assessment of the credibility of the witnesses and the inconsistencies in their testimonies. *See Brown*, 2013 IL 114196, ¶ 48. This is especially so where Diers testified in detail regarding the nature of the incident and its perpetrators, and had ample opportunity to view defendant.

¶ 36    Regarding the second *Biggers* factor, we find defendant's degree of attention during the incident favors the State. There is no indication that, as defendant argues, Diers's degree of attention was compromised by his focus on the gun. Although Diers stated that Sealey holding the gun was "one of the things" he was paying attention to during the time defendant was going through his pockets, Diers was able to give a detailed account of the events of the robbery and carjacking. This included that Sealey pointed a metallic gun at him and demanded his wallet, and that defendant was the man, who escorted Diers and Ferrier to the sidewalk after Sealey asked him to do so. See *In re J.J.*, 2016 IL App (1st) 160379, ¶ 30 (finding a witness's detailed and descriptive testimony of the robbery indicated she was attentive during the encounter despite having a gun pointed at her).

¶ 37 With regard to the third *Biggers* factor, Diers gave a description of defendant to Officer Rivota in which he described defendant's height, weight, approximate age, complexion, and clothing. Defendant contends Diers gave police a "vague" description with no mention of hairstyle, facial features, or other identifying marks, and did not testify in court regarding the offender's clothing. Nevertheless, Diers testified that he was able to see defendant's face during the incident and identified him both in misdemeanor court and in a photographic lineup at the police station. A witness's positive identification may be sufficient even if he only gave a general description based on his total impression of defendant's appearance. See *People v. Tomei*, 2013 IL App (1st) 112632, ¶¶ 51-52.

¶ 38 As defendant concedes, the fourth *Biggers* factor, Diers' certainty as to his identification of defendant, weighs in favor of that identification. Defendant contends this factor should carry little weight because psychological research suggests a weak correlation between confidence and accuracy of an identification. However, as defendant did not offer an expert to testify about witness identification research at trial, we will not consider defendant's arguments about this point raised for the first time on appeal. See *Tomei*, 2013 IL App (1st) 112632, ¶ 55 ("[I]f the defendant in the case at bar had introduced into evidence the testimony of an expert in eyewitness identification research, the trial court may have [then] chosen, based on the evidence presented in the case, to omit one of the listed factors") (quoting *People v. Rodriguez*, 387 Ill. App. 3d 812, 824 (2008)).

¶ 39 Lastly, regarding the fifth *Biggers* factor, Diers was robbed and carjacked in the late afternoon of October 12, 2012, and identified defendant to police for the first time on November 28, 2012, 47 days later. He had previously seen defendant in misdemeanor court and pointed him out to the prosecutor, but did not testify as to when this identification took place. Defendant claims

this length of time is "significant," citing studies which have shown that a person's memory of a stranger's face begins to fade after seven days, and commenting that this "memory decay" was compounded by the fact that Diers made a cross-racial identification, which he claimed increased the risk of producing an error. In support of his argument, defendant again cites to studies for the first time on appeal without having presented this evidence before the trial court to show why this delay would be particularly likely to impact the reliability of the identification. See *People v. Simmons*, 2016 IL App (1st) 131300, ¶ 98. Indeed, significantly longer lengths of time have not rendered identifications unreliable. See, *e.g.*, *People v. Holmes*, 141 Ill. 2d 204, 242 (1990) (18-month delay between crime and positive identification); *People v. Malone*, 2012 IL App (1st) 110517, ¶ 36 (one year and four month delay between crime and positive identification). Accordingly, the fifth *Biggers* factor weighs in favor of Diers's identification.

¶ 40    Taken together, the five *Biggers* factors support the reliability of Diers's identification of defendant as one of the three men who took his personal property and car at gunpoint.

¶ 41    Defendant further argues Diers's November 28 identification at the police station was tainted by Diers having seen him at misdemeanor court in connection with criminal trespass to his vehicle. He argues that "it is possible" Diers recognized defendant only after he had learned that defendant had been charged with criminal trespass to his car, equating it to a "one-man show-up" which tainted his subsequent identification of defendant in the photo array and in court.

¶ 42    While defendant is correct that one-man showups are generally considered unduly suggestive and are not favored as a means of identification (See *People v. Hughes*, 259 Ill. App. 3d 172, 176 (1994)), here, there is no indication this court appearance was treated as a showup by police officers or prosecutors. Diers merely recognized defendant once he saw him in the court

room. The court, in ruling, noted it considered all of the evidence relating to this claim and determined there was no taint due to Diers's identification of defendant in misdemeanor court. To the extent that it is possible that Diers assumed defendant was involved in the robbery because he was charged with trespass to Diers's vehicle, it is also possible he merely recognized defendant's face as being one of the people who robbed him and stole his car. The reviewing court must allow all reasonable inferences from the record in favor of the prosecution. *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). Further, the court made findings of credibility with regard to these issues, and determined Diers was credible and his identification was reliable. We see no reason to disturb these credibility findings on review.

¶ 43    Lastly, defendant argues that his alleged presence in the vehicle was circumstantial evidence, and the only direct evidence of his involvement is Diers' identification of him. However, a criminal conviction may be based on circumstantial evidence. *Brown*, 2013 IL 114196, ¶ 49. While the credible and positive testimony of a single witness is sufficient to convict (*People v. Gray*, 2017 IL 120958, ¶ 36), here the State presented further circumstantial evidence of defendant's involvement, including his presence in Diers's car and flight from the police. Accordingly, we find the State presented ample evidence to support defendant's conviction.

¶ 44    Taken together, the five *Biggers* factors support the reliability of Diers's identification of defendant as the unmasked man who took his personal property and car at gunpoint. We further find Diers's identification was not tainted by previously seeing him in misdemeanor court. Accordingly, viewing the evidence in the light most favorable to the State, we conclude a rational trier of fact could have found defendant guilty of aggravated vehicular hijacking and armed robbery beyond a reasonable doubt. We affirm defendant's convictions.

¶ 45     Affirmed.